UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KATHERINE L. FARTHING, | : | Case No. 1:14-cv-501 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IS REVERSED; (2) JUDGMENT IS ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore not entitled to supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 14-23) (ALJ's decision)).

**I.**

On May 26, 2011, Plaintiff filed an application for SSI. (Tr. 192). Plaintiff alleged disability beginning on April 1, 2001, due to depression and mood swings. (Tr. 14, 79).[1] The Social Security Administration denied Plaintiff's claim initially and

---

[1] Plaintiff previously filed an application for a period of supplemental security income in September 2004, and the ALJ issued a decision on February 29, 2008, finding that the claimant was not disabled. (Tr. 14). Unless new and material evidence or changed circumstances provide a basis for a different finding concerning a claimant's residual functional capacity, the Administration cannot make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act. (*Id.*) In this case, Plaintiff produced evidence documenting a change in her condition. (*Id.*) Therefore, the ALJ's previous determination is not binding. (*Id.*)

upon reconsideration. (Tr. 95, 98). Plaintiff then timely requested a hearing before an ALJ. (Tr. 101). The ALJ conducted a hearing on January 9, 2013 at which Plaintiff appeared and testified and vocational expert Laura Whitten testified by telephone. (Tr. 3, 18). The ALJ issued a decision unfavorable to Plaintiff on January 14, 2013. (Tr. 11). Plaintiff filed a request for review with the Social Security Administration Appeals Council on March 15, 2013. (Tr. 10). On April 18, 2014, the Appeals Council denied further review. (Tr. 1). Plaintiff now seeks judicial review pursuant to Section 205(g) of the Act. 42 U.S.C. §§ 405(g), 1383(c)(3).

At the time of the hearing, Plaintiff was 43 years old with a seventh grade education. (Tr. 22). Plaintiff's past relevant work experience includes work as an ink cleaner and carpet cleaner, but the ALJ did not consider these jobs because Plaintiff had not worked either job in the past 15 years.[2] (Tr. 22, 49).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant has not engaged in substantial gainful activity since May 26, 2011, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: depression and alcohol dependence (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925,

---

[2] Past relevant work experience is defined as work that the claimant has "done within the last 15 years, [that] lasted long enough for [the claimant] to learn to do it, and was substantial gainful activity." 20 C.F.R. § 416.965(a).

2

      416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to understanding, remembering, and carrying out instructions related to simple tasks, using judgment limited to simple work-related decisions. She can occasionally interact with coworkers, supervisors, and the public. She is limited to occasional work in environments with humidity or wetness atmosphere conditions, extreme cold, heat, and weather, as well as dusts, fumes, chemicals, and gases.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on September 21, 1969 and was 41 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 26, 2011, the date the application was filed (20 CFR 416.920(g)).

(Tr. 16-23).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations, and was therefore not entitled to SSI. (Tr. 23).

On appeal, Plaintiff argues that the ALJ erred by: (1) failing to give proper weight to Dr. Ramirez as the treating physician; and (2) not properly supporting the credibility assessment. The Court will address each error in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

4

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

The record reflects that:

### *1.     Medical Evidence*

Plaintiff has a long treatment history with Transitional Living, dating back to February 2008. (Tr. 341). At her initial evaluation, she described a long history of depression with current symptoms including low mood, low energy, transient suicidal thoughts without intent or plan, disrupted sleep, crying spells, and poor concentration (*Id.*) She also reported that she has great difficulty being around people and tends to isolate. (Tr. 343). At that time, she was taking Zyprexa and was switched to Albilify. (Tr. 354). She admitted to self-medicating with drugs and not taking her medications due to not feeling like they help her. (Tr. 365). In November 2008, she asked for assistance with keeping her doctor appointments and coping with stressors related to her appointments. (Tr. 357).

In association with a prior filing, Plaintiff underwent a consultative examination with Stephen Fritsch on May 11, 2010. (Tr. 383). His diagnoses included depressive disorder, alcohol dependence (reportedly in remission), borderline intellectual

functioning, and adult anti-social behavior. (Tr. 386). She was assigned a GAF score of 54.[3] (*Id.*)

Plaintiff returned to Transitional Living in 2011 as a former patient whose case was closed due to missing too many appointments. (Tr. 406). She participated in an adult diagnostic assessment in December 2011, during which she noted limitations in her activities of daily living, including difficulty making decisions and asking for help; difficulty taking responsibility and trusting; and difficulty expressing her opinions, and accepting feedback and criticism. (Tr. 408). She was diagnosed with major depressive disorder, recurrent mild, and assigned a GAF score of 40.[4] (Tr. 414).

Plaintiff resumed treatment with psychiatrist, Dr. Ramirez, on February 27, 2012, after previously treating with him in 2005. (Tr. 430). At that time, she reported a long history of depression and mood swings and multiple brief inpatient treatment episodes for suicidal ideation. (*Id.*) Plaintiff also reported hearing voices almost daily for years and seeing a little girl waving at her from a distance. (*Id.*) She also has a history of cutting behaviors. (*Id.*) Dr. Ramirez' initial assessment was bipolar II disorder, panic disorder with agoraphobia, alcohol dependence, and personality disorder, with a GAF score of 40. (Tr. 432). Progress notes evidence improvement with medications. (Tr. 439, 500).

---

[3] The Global Assessment of Functioning is a numeric scale (1 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults. A score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.

[4] A GAF score of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.

6

Dr. Ramirez completed a mental RFC assessment on October 22, 2012, noting marked restriction of Plaintiff's activities of daily living, marked difficulties in maintaining social functioning, and extreme difficulties in maintaining concentration, persistence, and pace (Tr. 493). He further noted four or more episodes of decompensation within a 12-month period, each of at least 2-weeks' duration. (*Id.*) He opined that Plaintiff would miss work more than 4-days per month due to her symptoms. (Tr. 494). He also opined that alcohol or substance abuse was not a contributing factor. (Tr. 495).

Plaintiff was admitted to Ft. Hamilton Hughes Hospital on October 4, 2012 for alcohol intoxication and drug overdose. (Tr. 455). She returned again on October 24, 2012 for cutting her wrist while she was mad. (Tr. 507). Contact with Plaintiff's case worker, Karen Gallagher, evidences Ms. Gallagher's concern that Plaintiff has been increasingly unstable for the past month and frequently does things to hurt herself. (Tr. 513).

### 2. *Plaintiff's Testimony*

At the hearing, Plaintiff testified that she does not drive and she does not have a license. (Tr. 34). She testified that the biggest issue preventing her from working is that she does not feel comfortable around people. (Tr. 34, 45). She also testified that she would not be able to concentrate. (Tr. 45).

Plaintiff testified that her main source of treatment was her psychiatrist, Dr. Ramirez, with whom she meets every 12 weeks. (Tr. 35). She testified that Dr. Ramirez

7

prescribes her Zoloft for depression and that is helps "a little bit." (Tr. 36). She also reported being prescribed Seroquel. (Tr. 44). She testified that she meets with her case worker, Karen Gallagher, 1-2 times a week and that Ms. Gallagher often picks her up and takes her to appointments or they have sessions in Ms. Gallagher's car. (Tr. 45).

She reported occasional alcohol and marijuana use. (Tr. 37). With regard to alcohol use, she reported that she stopped drinking heavily "a couple years ago, a year ago." (Tr. 41). She reported that she uses marijuana once every 2-3 months. (*Id.*) She testified that her hospitalization in October 2012 was a suicide attempt wherein she took Seroquel and drank several beers. (Tr. 42). She reported that a typical day consists of sitting in the garage and listening to the radio or visiting her grandkids. (*Id.*) Plaintiff testified that she lives in the garage of a home. (Tr. 34).

Plaintiff testified that she has problems dealing with people, she does not feel comfortable around a lot of people, and she gets scared. (Tr. 38-39). She also reported problems sleeping and paying attention. (Tr. 37, 39). She reported that she does not really go anywhere. (Tr. 40). If she has to go to the grocery store, her daughter goes with her. (*Id.*) Plaintiff only cooks things that she can microwave and does not have any hobbies. (Tr. 43). Plaintiff testified that she has crying spells and panic attacks 3-4 times a week typically lasting 15-20 minutes on average. (Tr. 44).

From a physical standpoint, Plaintiff reported problems breathing, for which she has been prescribed and uses and inhaler. (Tr. 46). She reported becoming short of breath when bending over and sitting back up. (*Id.*)

### *3.   Expert Testimony*

The vocational expert ("VE") testified that an individual would be able to perform past work as an ink cleaner, if the individual were capable of performing work at all exertional levels but was limited to simple tasks. (Tr. 50-51). The VE also reported the availability of other jobs at the medium level of exertion, including hand packager, and jobs at the light level including assembler of small products. (Tr. 51). The VE opined further that an individual would be able to perform the job of assembly press operator, if limited to sedentary work with the same non-exertional limitations posed by the ALJ's hypothetical. (Tr. 53).

Based on Dr. Ramirez's RFC restrictions in Exhibit 12F, an individual would be unable to perform any work. (Tr. 55).

The VE also testified that if an individual were to miss 4 days of work per month, she would be unemployable. (Tr. 56).

### *4.   ALJ Decision*

In his decision, the ALJ found that Plaintiff has the following severe impairments: depression and alcohol dependence. (Tr. 16).

The ALJ gave Plaintiff the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: she is limited to understanding, remembering, and carrying out instructions related to simple tasks, using judgment limited to simple work-related decisions, she can occasionally interact with co-workers, supervisors, and the public, and she is limited to occasional work in environments with

humidity or wetness atmosphere conditions, extreme cold, heat, and weather, as well as dusts, fumes, chemicals, and gases. (Tr. 17-18).

Based on the above RFC and vocational expert testimony, the ALJ found that Plaintiff is capable of performing jobs at the light unskilled level, including hand packager and assembler of small products. (Tr. 23). The ALJ also found jobs at the sedentary unskilled level, including ticket checker and assembly press operator. The ALJ therefore denied Plaintiff's claim. (*Id.*)

## B.

First, Plaintiff maintains that the ALJ failed to give proper weight to the treating physician, Dr. Ramirez.

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

> One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* "The ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the]

10

case record.'" *Id.* "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id.*

The Commissioner's regulations establish a hierarchy of acceptable medical source opinions. The hierarchy begins at the top with treating physicians or psychologists. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d). In general, more weight is given to examining medical source opinions than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1). Still, non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions.

> The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations of the opinions, than are required to treating sources.

SSR 96-6p, 1996 SSR LEXIS 2. "The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

11

The ALJ incorrectly found that Plaintiff only saw Dr. Ramirez one time, when she had been treating with Dr. Ramirez every three months since February 27, 2012 and receiving therapy from CPST services since December 2011.  (Tr. 406).  In fact, the record evidence indicates that Plaintiff saw Dr. Ramirez four times in 2012.  (Tr. 431, 435, 437, 498).  While the ALJ found that Dr. Ramirez's opinion was not entitled to controlling weight because he only saw the claimant one time, the ALJ based his decision on the findings of a consultative examiner who only examined the claimant one time.  Moreover, that one exam was in 2010, before much of the medical evidence related to Plaintiff's mental health treatment.  The ALJ also discounted the psychiatric progress notes from treatment with a therapist at Transitional Living, noting that they appear to be based "largely on the claimant's subjective complaints."  (Tr. 20).

On October 22, 2012, Dr. Ramirez opined that Plaintiff had no useful ability to function in several areas, including remembering work-like procedures, maintaining regular attendance, working in coordination with others without being distracted, getting along with coworkers or peers, dealing with work stress, and completing a normal workday/well without interruptions from psychologically based symptoms.  (Tr. 492-93).  He further opined that Plaintiff was markedly limited in her activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace.  (Tr. 493).  He opined that Plaintiff had a complete inability to function independently outside the home and would miss more than four days per month.  (Tr. 494).  On November 28, 2012, Dr. Ramirez opined that Plaintiff was disabled.  (Tr. 528).

At the hearing, the VE testified that based on the non-exertional impairments addressed in Dr. Ramirez's RFC, there were no jobs that Plaintiff could perform on a regular and continuing basis.

Accordingly, the ALJ failed to afford proper weight to Plaintiff's treating physician and instead relied upon the opinion of a one-time examining physician from 2010. While the ALJ's findings are not supported by substantial evidence, Dr. Ramirez's findings that Plaintiff is disabled are supported by substantial evidence.

## C.

Next, Plaintiff alleges that the ALJ's credibility assessment is not supported.

The ALJ's findings as to credibility are entitled to deference because the ALJ has the opportunity to observe the claimant and assess her subjective complaints. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). A court may not disturb the ALJ's credibility determination absent compelling reason. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

At the hearing, Plaintiff testified that she experienced several panic attacks each day, lasting 15 to 20 minutes at a time. She also testified that she has difficulty dealing with people. She further testified to problems with her concentration, persistence, and pace due to her depression and that she has difficulty remembering things. Plaintiff also has difficulty completing tasks, concentrating, understanding, and following instructions

(Tr. 254) and difficulty handling stress and changes in routine (Tr. 256). This testimony is consistent with the record. (Tr. 343, 367, 306-07, 492-93). Additionally, records evidence that Plaintiff has had problems making and keeping appointments due to her psychological symptoms. (Tr. 356-57).

The ALJ also discredits Plaintiff's testimony about her difficulty getting along with and being around others based on her presentation at the consultative examination in 2010. (Tr. 19). However, successful interaction with one medical examiner in 2010 does not equate to an ability to work with people successfully in a competitive work environment.

Finally, the ALJ focused on Plaintiff's history of alcohol and substance use despite the fact that the Social Security Administration found that drugs and alcohol were not material. (Tr. 74). Even Dr. Ramirez opined that alcohol and/or substance abuse was not applicable to Plaintiff's mental limitations. (Tr. 495).

Accordingly, the ALJ's credibility finding is not supported by substantial evidence.

### III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Here proof of disability is overwhelming and remand will serve no purpose other than delay. As fully recited here, in view of the extensive medical record evidencing disability, and the credible and controlling findings and opinions of Dr. Ramirez, the ALJ failed to meet its burden of finding substantial evidence that Plaintiff is able to engage in substantial gainful activity. Instead, proof of disability is overwhelming.

## IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner, that Katherine L. Farthing was not entitled to supplemental security income, is hereby found to be **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and it is **REVERSED**; and this matter is **REMANDED** to the Commissioner for an immediate award of benefits from October 22, 2012.

The Clerk shall enter judgment accordingly, whereupon this case shall be **CLOSED** in this Court.

Date:  5/8/15                                                                     *s/ Timothy S. Black*
                                                                                          Timothy S. Black
                                                                                          United States District Judge